NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ANGELINA E. BOVAIRD, *Petitioner/Appellee*,

*v.*

BRIAN J. BOVAIRD, *Respondent/Appellant*.

No. 1 CA-CV 21-0698 FC
FILED 6-16-2022

Appeal from the Superior Court in Maricopa County
No. FN2016-005844
The Honorable Ronda R. Fisk, Judge

**AFFIRMED**

COUNSEL

Bishop, Del Vecchio & Beeks Law Office, P.C., Phoenix
By Daniel P. Beeks
*Counsel for Petitioner/Appellee*

Modern Law, Mesa
By Katherine V. Stapleton
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

**B A I L E Y**, Judge:

¶1          Brian J. Bovaird ("Husband") appeals the superior court's order denying his motion to terminate his spousal maintenance obligation to Angelina E. Bovaird ("Wife").  Finding no legal error or abuse of discretion, we affirm the order.

## FACTS AND PROCEDURAL HISTORY

¶2          Under the terms of the parties' 2017 consent decree, Husband agreed to pay Wife $1,850 per month in spousal maintenance beginning February 2017 for 22 years.  They also agreed the spousal maintenance obligation was nonmodifiable and would terminate only after all payments had been made or upon Wife's remarriage or death.

¶3          Wife had been living with her significant other, Edward Turpin, in California since 2015.  In 2020, Wife petitioned for an ex parte income withholding order, alleging Husband was behind on the spousal maintenance payments.  In response, Husband petitioned to terminate spousal maintenance because it appeared Wife had married Turpin in August 2018.  Husband cited evidence that Wife and Turpin participated in what looked like a wedding ceremony at a chapel in Las Vegas, Nevada. Although he did not locate a marriage license, Husband argued the court could infer a legal marriage from the circumstances under Arizona Revised Statutes ("A.R.S.") section 12-2265.

¶4          The superior court held an evidentiary hearing, and after Husband testified, Wife moved for judgment as a matter of law on the ground that he failed to prove Wife had legally remarried. The court denied the motion.[1]    According to Wife, she and Turpin live together and celebrated a commitment ceremony with friends and family in Las Vegas in 2018.  She denied, however, that they were legally married.

¶5          The superior court concluded that under Arizona law, a de facto marriage or cohabitation relationship does not constitute a legal marriage that would terminate Husband's obligation to pay spousal maintenance under the parties' decree.  The court agreed that Wife's conduct reasonably led Husband to believe she and Turpin had married. But the court found that Wife knew her spousal maintenance would stop if she remarried and intentionally did not legally marry Turpin.  The court

---

[1]     The court dismissed Husband's claim that Wife obtained the consent decree by fraud and its terms were unfair.  Husband does not challenge that ruling on appeal.

denied Husband's petition to terminate spousal maintenance and ordered Wife to pay her own attorneys' fees.

¶6            Husband timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶7            Husband argues the superior court erred by failing to apply A.R.S. § 12-2265, which allows courts to infer the existence of a legal marriage under some circumstances. We review questions of statutory construction *de novo*. *Wilmot v. Wilmot*, 203 Ariz. 565, 569, ¶ 10 (2002).

¶8            Section 12-2265 states:

> A certificate of marriage executed in accordance with the laws of this state or a foreign state or country, or the record thereof, or a certified copy of such record shall be prima facie evidence of the facts therein stated in any proceeding, civil or criminal, in which the matter is in question. *When the marriage is to be proved, evidence of the admission of such fact by the adverse party, or evidence of general repute, or evidence of cohabitation as married persons, or other evidence from which the fact may be inferred, is competent.*

(Emphasis added.) The parties agree that this statute does not eliminate the marriage license requirement for a valid marriage, however. Indeed, common-law marriages are not recognized in Arizona, California, or Nevada unless the parties entered a common-law marriage in a state where it is valid. *See Vandever v. Indus. Comm'n*, 148 Ariz. 373, 376 (App. 1985) (citing *In re Estate of Trigg*, 102 Ariz. 140 (1967); *Grant v. Superior Ct.*, 27 Ariz. App. 427 (1976)); A.R.S. § 25-111 (requiring a ceremony and marriage license for a valid marriage in Arizona); *see also Knight v. Superior Ct.*, 26 Cal. Rptr. 3d 687, 690-91 (Cal. Ct. App. 2005); Cal. Fam. Code §§ 300(a), 308; Nev. Rev. Stat. §§ 122.010(1) (providing that a common-law marriage is not valid), 122.040(1) (requiring a marriage license for a valid marriage).

¶9            Arizona law does not provide for termination of spousal maintenance upon a spouse's romantic cohabitation unless the parties agree otherwise. *See Van Dyke v. Steinle*, 183 Ariz. 268, 274 (App. 1995). To the contrary, Arizona law holds "that the existence of a cohabitation arrangement or '*de facto* marriage' between a spouse receiving maintenance and a cohabitant is not a sufficient basis, in itself, for termination or

reduction of spousal maintenance." *Id.* (quoting *Smith v. Mangum*, 155 Ariz. 448, 450 (App. 1987)).

¶10 Husband argues that A.R.S. § 12-2265 required the superior court to infer Wife's marriage based on the evidence he offered. Section 12-2265 is a procedural statute that allows courts to infer a legal marriage exists when the physical marriage license is unavailable or the parties admit to the marriage. It does not, however, require the superior court to infer the existence of a valid marriage license on the facts here.

¶11 The events described in the superior court suggest Wife and Turpin participated in a ceremony in Las Vegas. The documentary evidence shows it was a non-legal "commitment ceremony," not a legally binding marriage ceremony. Thus, the ceremony did not result in a valid marriage license and explains why Husband could not locate a marriage license in the Clark County records. As Husband acknowledged, a marriage ceremony would have had to occur in California, not Nevada, for Wife to obtain a confidential marriage license in California. *See* Cal. Fam. Code § 501(a). There was no evidence of a ceremony in California. This explains why Husband could not locate a marriage license in the California counties he searched. Thus, the ceremony and surrounding circumstances did not require the court to find that Wife legally married Turpin. The court found that Wife was very much aware a legal marriage would end her right to spousal maintenance and had done everything but legally marry Turpin to avoid that result. This does not contravene the terms of the consent decree.

¶12 Husband contends the superior court abused its discretion when it accepted Wife's testimony that she intentionally avoided a legal marriage to keep receiving spousal maintenance from Husband. According to Husband, this conflicts with the court's other findings that much of Wife's testimony was not credible, that she engaged in "substantial gamesmanship," and that she "gave cagey, evasive answers to direct questions about her intentions and the nature of her relationship with Mr. Turpin." To be sure, Wife claimed she was not ready to marry Turpin, yet she participated in the commitment ceremony, lived with him, and exchanged "promise rings." But she consistently stated she intentionally avoided a legal marriage to Turpin.

¶13 The superior court is in the best position to determine witness credibility and resolve conflicts in the evidence, and we generally defer to its findings. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Husband asks this court to weigh Wife's testimony differently, but "[w]e must give due regard to the [superior] court's opportunity to judge the credibility of

the witnesses" and do not reweigh conflicting evidence on appeal. *Id.* The record supports the superior court's conclusions that Wife was not concealing a legal marriage and that she intentionally did not marry Turpin.

**¶14** We reject Husband's contention that the superior court failed to consider whether § 12-2265 applied. The parties addressed this statute at the evidentiary hearing. Although the court did not mention § 12-2265 in its final ruling, neither party requested findings of fact and conclusions of law under Arizona Rule of Family Law Procedure 82(a). Thus, the court did not have to set forth a detailed explanation of its reasoning. We presume the court considered and rejected this argument. *See Stevenson v. Stevenson*, 132 Ariz. 44, 46 (1982) (stating that, on appeal, the appellate court presumes the superior court found every fact necessary and will affirm if any reasonable construction of the evidence supports the decision).

**¶15** Finally, Husband argues the superior court abused its discretion in denying his request for attorneys' fees. We find no abuse of discretion. Husband has greater financial resources and Wife's position was not unreasonable. *See Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014) (reviewing a superior court's ruling on a request for attorneys' fees under § 25-324 for an abuse of discretion).

## ATTORNEYS' FEES AND COSTS ON APPEAL

**¶16** In the exercise of our discretion and after considering the reasonableness of the parties' positions and financial resources, we order each party to pay their own attorneys' fees on appeal. *See* A.R.S. § 25-324. Wife is entitled to her taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-342.

## CONCLUSION

**¶17** We affirm the superior court's order denying Husband's petition to terminate his spousal maintenance obligation.



AMY M. WOOD • Clerk of the Court
FILED: AA

5